IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-296-CR




HOMERO GUADALUPE RAMOS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT



NO. CR-90-469, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING


 





PER CURIAM

 A jury found appellant guilty of two counts of aggravated sexual assault. Tex.
Penal Code Ann. § 22.021 (Supp. 1992). The jury assessed punishment at imprisonment for
thirty-five years.

 On the night of October 20, 1990, the complaining witness and a female friend met
after work for drinks. During the course of the evening, the two women met and conversed with
Dan Castleberry in the lounge at the San Marcos Inn. The complainant's friend left the lounge
at 9:30, but the complainant remained and continued her conversation with Castleberry. At
10:30, they were joined by appellant, Castleberry's friend. The trio talked until the lounge closed
at midnight, after which the two men followed the complainant to her apartment. She invited
them in for a drink. Inside the apartment, appellant and Castleberry seized the complainant and
sexually assaulted her repeatedly. This ordeal lasted approximately one-and-a-half hours and
involved both vaginal and anal penetration. 

 Castleberry testified for the State. He admitted his involvement in the sexual
assaults and confirmed the complainant's account of the events, including her identification of
appellant as the second assailant. Appellant also testified. He admitted being at the lounge with
Castleberry, but said he did not talk to the complainant or go with Castleberry to her apartment. 
Appellant's claim that he was elsewhere when the assaults occurred was corroborated by other
defense witnesses.

 It was the jury's responsibility to decide the credibility of the witnesses and to
resolve the conflicts in the testimony. Appellant does not challenge the sufficiency of the evidence
to sustain the judgment.

 In point of error four, appellant contends that the victim's identification of him at
trial was tainted by an impermissibly suggestive pretrial identification procedure. Appellant does
not refer us to any motion to suppress or objection to the in-court identification, and we find none
in the record. Accordingly, this contention was not preserved for review. Tex. R. App. P. Ann.
52(a) (Pamph. 1992).

 The contention is without merit in any event. When first questioned by the police
following the assaults, the complainant remembered Castleberry's name but could not remember
the name of the second man. She could only say that his name sounded something like "hombre." 
The next day, she remembered that the second man's name was "Homero." When she reported
this to officer Christopher Tureaud, he asked her if the full name could be Homero Blancas. (1) 
According to the officer, the complainant "lit up" when he mentioned this name.

 On November 7, based on information received from Castleberry and others
implicating appellant in this offense, the complaining witness was shown a photo spread with
pictures of six men, one of whom was appellant. According to the officer who conducted the
procedure, the complainant made a "possible" identification of appellant. At trial, the complainant
testified that her identification of appellant's photograph was positive. It is appellant's contention
that this identification was not reliable because his name had been suggested to the victim by the
police and because she was predisposed to identify him based his presence in the lounge on the
night of the offense. 

 The evidence reflects that the complaining witness remembered appellant's first
name without any prompting or suggestions by the police. It was only after she gave the officer
the name "Homero" that he suggested to her the name of Homero Blancas. There is no evidence
that the complainant was told the names of the men in the photo spread or that the spread
contained a picture of a man named Homero. In short, there is no evidence that the officer
suggested appellant's name to the complainant or that his name had any effect whatsoever on the
victim's pretrial identification of his photograph. 

 Appellant's contention that the victim was predisposed to identify him because she
had seen him earlier on the night of the assaults is also without merit. Appellant cites no authority
for the proposition that a crime victim's identification of her attacker should be suppressed
because she was acquainted with him before the crime was committed. Appellant's argument does
not go to the admissibility of the identification, but to its weight. 

 The remainder of appellant's argument under this point of error is, in essence, an
attack on the credibility of the complainant. He points out that her initial statements to the police
contained certain discrepancies regarding the description of the second assailant. He notes that
the victim never told the police that the second man had a beard. (2) He suggests that the
complainant's ability to remember the events accurately was impaired by intoxication. (3) All of
these factors, however, relate only to the weight of her identification testimony.

 We find no support in the record for appellant's contention that the pretrial
identification procedure was suggestive. Because the pretrial identification was not shown to be
unreliable, there was nothing to taint the in-court identification. The fourth point of error is
overruled.

 In point of error two, appellant contends that he was denied due process of law
when the State failed to disclose in full the agreement it made with Castleberry in exchange for
his testimony. In point of error three, appellant contends that the State permitted perjured
testimony concerning the nature of its agreement with Castleberry to go uncorrected. Appellant
states that he was told prior to trial that Castleberry had four indictments pending against him: for
aggravated sexual assault in Hays County (this offense); for unauthorized use of a vehicle in
Gillespie County; and for burglary of a building in Presidio County (two cases). He says that he
was told that an agreement had been reached by which the State would recommend that
Castleberry be given concurrent twenty-year sentences in those cases in exchange for his
testimony in the instant cause. Appellant complains that he was not told of two pending Hays
County indictments for burglary of a habitation that were also included in Castleberry's agreement
with the State, and that the State permitted Castleberry to misrepresent the extent of his agreement
during his testimony.

 Appellant did not file a motion for new trial, and most of the assertions he makes
under these points of error are not supported by the record. Appellant asserts in his brief that he
filed motions for the production of evidence favorable to the accused and for discovery of
agreements with witnesses, but these motions do not appear in the record. Appellant asserts that
the State agreed to provide the information requested by these motions, but this agreement does
not appear in the record. Most importantly, the record does not reflect what was or was not
disclosed to appellant concerning the charges pending against Castleberry and his agreement with
the State. The record does reflect that defense counsel questioned a witness about the two Hays
County burglaries during the punishment stage and was aware at that time that they were part of
Castleberry's agreement with the State. 

 During his testimony, the State questioned Castleberry concerning the charges
pending against him as follows:



Q You are charged with the sexual assault of [the complainant]; is that correct?


A Yes, sir, I am.


Q Back on October 19, 1990?


A Yes, sir.


Q Were you or were you not involved in the commission of that offense?


A Yes, sir, I was.


Q Before we go any further, do you have any other problems with the law?


A I was arrested in Tennessee for forgery.


Q All right. And how about in Presidio County or Gillespie County?


A In Presidio County I have two burglary cases, and a case in Fredericksburg
for theft of an auto vehicle.


Q All right. And are you contesting any of those charges?


A No, sir, I'm not.



In response to questions by defense counsel during cross-examination, Castleberry acknowledged
that he had broken the terms of his Tennessee probation; that the sexual assault, the unauthorized
use of a vehicle, and the two Presidio County burglaries carried a maximum possible term of
imprisonment of 149 years; that he had been promised a maximum term of 20 years in these cases
in exchange for his testimony in this cause; that he had lied in his initial statements to the police;
and that he would "do what I have to do" to avoid a long prison term.

 Appellant has failed to show that the State withheld from him the full terms of its
agreement with Castleberry or that Castleberry made a false statement under oath concerning his
agreement with the State. Moreover, if appellant was erroneously misled or deceived with regard
to the State's agreement with Castleberry, the error was harmless beyond a reasonable doubt. 
Tex. R. App. P. Ann. 81(b) (Pamph. 1992); see Duggan v. State, 778 S.W.2d 465, 469 (Tex.
Crim. App. 1989). The jury knew that Castleberry's cooperation had been secured by a promise
of leniency in four pending felony cases. Keeping in mind that Castleberry's testimony was
corroborated in all significant respects by that of the complaining witness, we believe that the
jury's evaluation of Castleberry's credibility would not have been effected by knowledge that the
promise of leniency extended to two more felonies. Points of error two and three are overruled.

 In his first point of error, appellant urges that the district court erred by overruling
his objection to the admission in evidence of a pistol. Appellant's argument is in two parts: that
the pistol was irrelevant and that it was not adequately connected to him.

 The complaining witness testified that during her conversation with appellant in the
lounge, he told her that he "took care of his friends." As he said this, appellant placed the
complainant's hand on the small of his back. She felt there a hard object that she believed was
a pistol. The complainant also testified while she did not see the pistol during the assaults, her
knowledge that appellant had a gun was one of several reasons why she feared she was going to
be killed. Castleberry testified that after the assaults, appellant had the pistol in his hand and "was
threatening to go back and shoot [the complainant]." This testimony was probative of the
aggravating element in this cause, the victim's fear of serious bodily injury and death, and
informed the jury of the full context of the offense. Appellant's argument the pistol was not
relevant because it was not used or exhibited during the sexual assaults is without merit. 

 Castleberry identified the pistol as one he had purchased for his girlfriend and
loaned to appellant. Castleberry saw the pistol in appellant's possession on the night of the
offense. The police recovered the pistol from Castleberry's girlfriend after appellant told them
following his arrest that "the gun you're looking for" was in her possession. We find that the
evidence adequately links the pistol to appellant. Point of error one is overruled.

 Appellant's final point of error is that the court's charge to the jury was
fundamentally defective because it did not contain a special issue inquiring if a firearm was used
or exhibited during the offense. Appellant argues that without this special issue, the charge
permitted the jury to use the pistol as the aggravating element. This contention is without merit.

 The charge instructed the jury that a person commits the offense of aggravated
sexual assault if he commits the offense of sexual assault and "by acts or by words [he] places the
victim in fear that serious bodily injury or death will be imminently inflicted on any person." In
applying the law to the facts with respect to both counts, the court required the jury to find that
appellant "place[d] the said [complaining witness] in fear that serious bodily injury or death would
be imminently inflicted upon her." There is nothing in the court's charge to suggest that
appellant's possession of a pistol on the night in question was in itself an aggravating element.

 Appellant did not request a special issue on the use of a deadly weapon. There is
no evidence that a firearm or other deadly weapon was used or exhibited during the commission
of the offense. No error is presented. The fifth point of error is overruled.

 The judgment of conviction is affirmed.


[Before Justices Powers, Jones and Kidd]

Affirmed

Filed: August 26, 1992

[Do Not Publish]

1.   Tureaud testified that he mentioned this man's name because he was the only "Homero"
he knew. There is no evidence to suggest that Homero Blancas was implicated in this offense
in any way.
2.   Appellant and other defense witnesses testified that he had a beard on the night in
question.
3.   There is no evidence that the complaining witness was intoxicated before or during the
assaults. She testified that she was not intoxicated, and this was confirmed by other
witnesses.